**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DOUGLAS C. ROUNDY and LISA A. ROUNDY,

           Plaintiff(s),

v.

BANK OF AMERICA, N.A., et al.,

           Defendant(s).

2:12-CV-1253 JCM (GWF)

**ORDER**

Presently before the court is defendants', Bank of America, N.A. ("BANA") and ReconTrust Company N.A. ("ReconTrust"), motion to dismiss. (Doc. # 13). Plaintiffs filed a response in opposition (doc. # 16), and defendants filed a reply (doc. # 17).

Additionally, the court permitted the parties to file supplemental briefing due to a recent Nevada Supreme Court case. (Docs. ## 20-21).

**I.    Background**

Plaintiffs purchased a home located at 5917 Casa Coronado, North Las Vegas, Nevada. (Doc. # 10, Amended Compl. ¶ 8; doc # 12, Ex. A).[1] Plaintiffs financed the property by obtaining

---

[1] The court takes judicial notice of certain authenticated exhibits in defendants' motion to dismiss. *Intri-Plex Technology, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment as long as the facts are not subject to reasonable dispute."). These judicially recognized documents attached to the defendants' motion to dismiss include the deed of trust, notice of default, election of sale, notices of trustee's sale, and assignments of the deed of trust.

**James C. Mahan**
**U.S. District Judge**

1  a $276,750 loan from Universal American Mortgage Company, LLC on August 16, 2004. (Doc. #
2  12, Ex. B). The property was secured with a deed of trust encumbering the property. (Id. at Ex. B.).
3  Plaintiffs also obtained a junior loan from Universal American Mortgage Company in the amount
4  of $69,150. (*Id.* at Ex. C).

5  Six months later, on February 10, 2005, plaintiffs refinanced by obtaining a $355,500 loan
6  from Countrywide Home Loans, Inc. ("Countrywide"), which was secured by a senior deed of trust
7  encumbering the property. (*Id.* at Ex. D; *see also* compl. ¶ 10). This is the foreclosing deed of trust.
8  This deed of trust lists Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary
9  and nominee of the lender and lists CTC Real Estate Services as the trustee. (*Id.*, Ex. D at 2; *see also*
10 compl. ¶ 11). The deed of trust also allows the lender to foreclose on the property if the plaintiffs
11 did not make their loan payments and to appoint a substitute trustee thereunder. (*Id.*, Ex. D ¶¶ 22
12 & 24). Further, page four of the deed states:

> "Borrower understands that and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."

17 (*Id.*, Ex. D at p. 4). Plaintiffs' initials, likely verifying that they read the page, can be seen
18 immediately below this paragraph. (*Id.*).

19 Plaintiffs' complaint is careful not to admit default; however, that omission will not alter the
20 court's decision for the reasons stated *infra*. Beginning in 2008, non-judicial foreclosure
21 proceedings began. (Compl. ¶ 12). On September 12, 2008, MERS executed a substitution of
22 trustee substituting defendant ReconTrust as the trustee under the foreclosing deed of trust. (Doc.
23 # 12, Ex. F). That same date, ReconTrust executed a duly recorded notice of default and election
24 to sell under the deed of trust. (Doc. # 12, Ex. G).

25 ReconTrust executed two separate notices of trustee's sale, and both were postponed. (Doc.
26 # 12, Ex. H & I). Neither party elaborates why the trustee's sales were postponed.
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

On February 11, 2011, MERS assigned the foreclosing deed of trust to Wachovia Bank. (Doc. # 12, Ex. J). Thereafter, ReconTrust recorded three additional notices of trustee's sales to occur on various dates, but each was postponed. (Doc. # 12, Ex. K-M). Neither party elaborates why the trustee's sales were postponed.

Several months after the fifth postponement of a trustee's sale, plaintiffs filed the instant action in state court. (Doc. # 1). Defendants properly removed to this court. (*Id.*). The parties stipulated to allow plaintiffs to file an amended complaint, which this court promptly granted. (Docs. # 8-9). The amended complaint alleges six causes of action. (Doc. # 10). The court will address each cause of action infra. No foreclosure has occurred to date.

## II.    Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

1    Where the complaint does not "permit the court to infer more than the mere possibility of
2 misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief."
3 *Id.* (internal quotations and alterations omitted).  When the allegations in a complaint have not
4 crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550
5 U.S. at 570.

6    The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca,* 652 F.3d 1202,
7 1216 (9th Cir. July 25, 2011). The *Starr* court stated, "First, to be entitled to the presumption of
8 truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of
9 action, but must contain sufficient allegations of underlying facts to give fair notice and to enable
10 the opposing party to defend itself effectively. Second, the factual allegations that are taken as true
11 must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party
12 to be subjected to the expense of discovery and continued litigation." *Id.*

13    "Generally, a district court may not consider any material beyond the pleadings in ruling on
14 a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint
15 may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896
16 F.2d 1542, 1555 n.19 (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are
17 alleged in a complaint and whose authenticity no party questions, but which are not physically
18 attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without
19 converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d
20 449, 454 (9th Cir. 1994). Under Fed. R. Evid. 201, a court may take judicial notice of "matters of
21 public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the
22 district court considers materials outside of the pleadings, the motion to dismiss is converted into
23 a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925
24 (9th Cir. 2001).

25 **III.    Discussion**

26    The court will address each cause of action in turn.  Some causes of action overlap.
27 . . .
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

*A. Wrongful Foreclosure*

The first claim for relief in plaintiffs' complaint is untitled. (Doc. #10, Compl. at p. 2). In the motion to dismiss (doc. # 12), defendant construed the cause of action as wrongful foreclosure. In the response in opposition, the plaintiffs seem to argue for a wrongful foreclosure cause of action. (Doc. # 16). The court construes the first cause of action as wrongful foreclosure.

A court in this district has recognized that plaintiffs may plead statutory wrongful foreclosure under NRS 107.080 or the tort claim for wrongful foreclosure. *Chavez v. California Reconveyance Co.*, 2:10-cv-00325, 2010 WL 2545006, *2 (D. Nev. June 18, 2010). "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure or performance existed on the mortgagor's or trustor's part which would have authorized the foreclose or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). "Therefore, the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." *Id.*

In this case, no foreclosure has occurred. Therefore, there cannot be a cause of action for the tort of wrongful foreclosure. Additionally, plaintiffs conspicuously do not admit default in the complaint even though they admit a notice of default and election to sell was recorded. (*See* compl. ¶¶ 11-13). However, in the response to the motion to dismiss, plaintiffs state "[w]hile it is true that the borrower in this case, the Roundys, stopped making monthly note payments sometime prior to the time the trustee recorded a notice of default and election to sell . . . ." (Doc. # 16; 7:4-6).

Plaintiffs allege that they are presently current on their note. (*See* compl. ¶ 16; doc. # 16; 7:10-11). At this stage, the court must assume that fact is true. Even so, it cannot prevent their wrongful foreclosure action from being dismissed because all parties agree there has been no foreclosure to date.

Finally, to the extent plaintiffs were attempting to allege a statutory wrongful foreclosure under NRS 107.080, the court finds the process complied with the applicable version of NRS 107.080. Plaintiffs' claim of wrongful foreclosure is dismissed.

James C. Mahan
U.S. District Judge

- 5 -

B.      *Truth in Lending Claims*

In plaintiffs' response to the motion to dismiss, plaintiffs admit that their second, fourth, and fifth causes of action set forth claims under the Truth in Lending Act ("TILA").

TILA contains a one year statute limitation for damages claim. 15 U.S.C § 1640(e); *Lynch v. RKS Mortg. Inc.*, 588 F.Supp.2d 1254, 1259 (E.D. Cal. 2008) ("Pursuant to 15 U.S.C. § 1640(e), a claim for damages under TILA must be commenced within one year following the date of the alleged violation."). Plaintiffs signed their loan in 2005. Plaintiffs admit in their complaint and in their response in opposition that TILA claims are time barred without tolling.

"[E]quitable tolling may be applied if, despite due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). "Where a plaintiff alleges TILA violations during initial disclosures, equitable tolling is not appropriate if 'nothing prevented [plaintiff] from comparing the loan contract, [the] initial disclosures, and TILA's statutory and regulatory requirements.'" *Park v. Wachovia Mortg., FSB*, no. 10cv1547, 2011 WL 4571874, AT *3 (S.D. Cal. Sep. 30, 2011) (alterations in original) (citing *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 70, 75 (9th Cir. 1996). In support of their equitable tolling argument, plaintiffs state the following:

> "The truth in lending disclosures is one of many pages the Borrower must look over in closing escrow. It can be safely assumed that generally most people do not even look at the loan documents again once they close the loan. Thus, the one year statute of limitations is really of not much use, without equitable tolling, because most people only look more closely at their loan documentation when they begin to have problems with their loan."

(Doc. # 16, opposition to motion to dismiss, p. 10-11). Failing to read the loan and disclosure documents at closing, because there is a lot of them, cannot establish the due diligence required for equitable tolling. Additionally, plaintiffs argue that "[n]one of the violations alleged in the complaint would be clear to a layman." (Doc. # 16, 13:2). Claiming to not understand loan documents does not trigger equitable tolling. Plaintiffs' second, fourth, and fifth claims for truth in lending violations fail and are dismissed.

C.      *Fraudulent Inducement*

Plaintiffs' third cause of action alleges fraudulent inducement. "In alleging fraud or mistake,

James C. Mahan
U.S. District Judge

- 6 -

1  a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P.
2  9(b). "[A] plaintiff asserting fraud against a corporate [entity] must state the names of the persons
3  who made the allegedly fraudulent representations, their authority to speak, to whom they spoke,
4  what they said or wrote, and when it was said or written." *Roberts v. McCarthy*, no. 2:11-cv-00080,
5  2010 WL 1363811, at #3 (D. Nev. April 11, 2011) (quoting *Spencer v. DHI Mortg., Inc.*, 642
6  F.Supp.2d 1153, 1164 (E.D. Cal. 2009).

7      Fraud claims must meet the heightened pleading standard and allege the who, what, when
8  where, and how.  This complaint alleges no specific facts and cannot meet the heightened pleading
9  standard required for fraudulent inducement.  Plaintiffs even admit that "if this Court is inclined to
10 follow the logic of the United State [sic] District Court cases cited in the moving papers, Plaintiff
11 cannot overcome that analysis, and dismissal would be appropriate." (Doc. #16, 15:4-6).  This court
12 will follow such well established law.

13     Further, fraudulent inducement claims have a three year statute of limitations.  *See* NRS
14 11.190(3)(d).  Plaintiffs signed the deed of trust in 2005, approximately eight years ago.  The claim
15 is time barred.

16     However, plaintiffs argue that equitable tolling should apply for the same reasons that
17 equitable tolling should apply in the TILA claims.  The court finds plaintiffs' equitable tolling
18 arguments unavailing.  Equitable tolling cannot be triggered because plaintiff did not read all their
19 loan paperwork or because a layperson allegedly cannot understand loan paperwork. Plaintiffs' third
20 cause of action is dismissed.

21     D.    *Nevada Unfair Lending Practices Act*

22     Plaintiffs' sixth and final cause of action is for alleged violations of Nevada's Unfair Lending
23 Practices Act. This claim is also time barred. The applicable statute of limitations is two years. *See*
24 NRS 11.190(3)(a).  As previously stated, the relevant conduct giving rise to this action occurred
25 approximately eight years ago. Plaintiffs admit that "[i]f there is no equitable tolling, the statute has
26 run." (Doc. #16, 15:25-26).  As justification for equitable tolling, plaintiffs cite their previous
27 arguments that they did not read all the relevant documents, and, even if they did read all the
28

**James C. Mahan**
**U.S. District Judge**

- 7 -

documents, they would not have understood them. This does not warrant equitable tolling. The sixth cause of action does not state a claim and is dismissed.

E. Sur-reply

At the request of plaintiffs, the court permitted a sur-reply and a response to the sur-reply because of a recently decided Nevada Supreme Court case, *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). Plaintiffs argue that *Edelstein* provides clarifying guidance when the relevant entities split the note and deed of trust. Plaintiffs argue that "[t]he split of the note and deed of trust makes nonjudicial foreclosure improper." (Doc. # 20, 3:14).

The court disagrees for the reasons stated by defendants in their response to the sur-reply. (Doc. # 21).[2] Additionally, the express language of the *Edelstein* case precludes plaintiffs' argument for two reasons. First, even assuming that the note and deed of trust were split by MERS, that fact does not automatically foreclose the possibility of a nonjudicial foreclosure permanently. "Indeed, while entitlement to enforce both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan." *Edelstein*, 286 P.3d at 259 (internal citations omitted). "Instead, a promissory note and a security deed are two separate but interrelated, instruments, and their transfers are also distinctly separate." *Id.* (internal citations and alterations omitted).

If the note and the deed of trust are held by the same entity at the time of a foreclosure then there is no improper foreclosure because the note and deed were previously separated prior to the foreclosure. The Nevada Supreme Court stated "that such separation is not irreparable or fatal to either the promissory note or the deed of trust, but it does prevent enforcement of the deed of trust through foreclosure unless the two documents are ultimately held by the same party. *Id.* at 260 (internal citations omitted). "MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified." *Id.* at 260.

---

[2] Defendants argue that plaintiffs misread *Edelstein*, which is true. Defendants further argue that nothing improper occurred under the express language of this deed of trust, which is also true.

1  Second, there has been no foreclosure to date. All parties agree on this fact. Assuming that even if the note and deed of trust are currently split, that fact does not become relevant until foreclosure. The *Edelstein* court reserved this exact issue. "Because it is not at issue in this case, we need not address what occurs when the promissory note and the deed of trust remain split at the time of the foreclosure." *Id.* at 262 n. 14. *Edelstein* does not prevent a motion to dismiss under these facts.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss (doc. # 13) be, and the same hereby, is GRANTED and plaintiffs' amended complaint (doc. # 10) is DISMISSED without prejudice.

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment and close the case.

DATED February 6, 2013.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 9 -